**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG**

KATHRYN ANN MONTGOMERY,

      **Plaintiff,**

v.                                      **CASE NO. 6:12-cv-03018**

MICHAEL J. ASTRUE,
**Commissioner of Social Security,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  The plaintiff has chosen to represent herself, both at the administrative hearing and before this court.   She did not file a memorandum in support of her claim.

Plaintiff, Kathryn Ann Montgomery (hereinafter referred to as "Claimant"), filed an application for SSI on July 22, 2008, alleging disability as of July 9, 2008, due to hepatitis C, type II diabetes, sciatic nerve disorder, and back disorder.   (Tr. at 123-26, 160.)   The claim was denied initially and upon reconsideration.   (Tr. at 72-76, 78-80.) On May 13, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ").   (Tr. at 81.)   The hearing was held on September 8, 2010, before the Honorable

William Paxton.   (Tr. at 19-55.)   By decision dated October 5, 2010, the ALJ determined that Claimant was not entitled to benefits.   (Tr. at 5-18.)   The ALJ's decision became the final decision of the Commissioner on May 10, 2012, when the Appeals Council denied Claimant's request for review.   (Tr. at 1-3.)   On July 12, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.   See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).   A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.   20 C.F.R. § 416.920 (2011).   If an individual is found "not disabled" at any step, further inquiry is unnecessary.   Id. § 416.920(a).   The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.   Id. § 416.920(b).   If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.   Id. § 416.920(c).   If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.   Id. § 416.920(d).   If it does, the claimant is found disabled and awarded benefits.   Id.   If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.   Id. § 416.920(e).   By satisfying inquiry

2

four, the claimant establishes a prima facie case of disability.   Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).   The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. § 416.920(f) (2011).   The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the date of the application.   (Tr. at 10.)   Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity, arthritis of the right foot, hepatitis C, diabetes mellitus, back pain syndrome, osteoarthritis of the left knee, and arthritis of the right knee.   (Tr. at 10.)   At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.   (Tr. at 13.)   The ALJ then found that Claimant has a residual functional capacity for work at the light level, reduced by some exertional limitations (never climb ladders, ropes or scaffolds; occasionally balance, kneel, stoop, crouch, crawl and climb ramps and stairs; avoid concentrated exposure to extreme heat, extreme cold, vibration and hazards such as heights and machinery).   (Tr. at 13.)   Claimant has no past relevant work.   (Tr. at 16.)   The ALJ concluded that Claimant could perform jobs such as fast food worker,

3

cleaner and housekeeper, and cashier, all of which jobs exist in significant numbers in the national and regional economy.   (Tr. at 17.)   On this basis, benefits were denied. (Tr. at 18.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.   Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."   Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was fifty-one years old at the time of the administrative hearing.   (Tr. at 26.)   Claimant completed high school, and has participated in some vocational training

4

and community college classes.   (Tr. at 26.)   Claimant's earnings are insufficient to conclude that she has any vocationally relevant prior work experience.   (Tr. at 46.)

The court has reviewed the entire record, and will discuss it further below as necessary.   The court will focus on the period of July 9, 2008 (date of application) through October 5, 2010 (date of ALJ's decision), which is the time period covered by the ALJ's decision denying benefits.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant did not file a memorandum in support of her claim.   Her Request for Review of Hearing Decision/Order states as follows:

> There is information I forgot to tell Judge Paxton.   I should request that the first medical examination report be discarded from the case do [sic; due] to errors in the report.   And I'm very ill with immunity problems that are seriously debilitating.

(Tr. at 4.)   Her Complaint states:

> The decision of the Commission should be reversed and remanded because it is not supported by substantial evidence, and/or because the Commissioner committed other error which is [he] did not take into consideration the medical information I forward[ed] to the office as well as the consideration of the State of W.V. medical examination that qualified me as disabled and received a medical card.

(ECF No. 2, at 2.)

Claimant underwent a consultative examination by Dr. Rakesh Wahi on October 22, 2007.   (Tr. at 415-421.)   The report of this examination is probably the "first medical examination report" which Claimant wants to be "discarded" due to alleged errors.   She does not specifically identify the errors.   The physical examination reported that Claimant was 5'8" tall and weighed 257 pounds.   (Tr. at 417.)   Dr. Wahi's impressions were "Hepatitis C, symptomatic; Type 2 diabetes, well controlled;

5

Degenerative joint disease of the back."   (Tr. at 418.)   He stated his opinion as follows:

> The claimant suffers from hepatitis C, although the claimant did not provide any objective substantiation of that diagnosis.   It appears that she is very confident of the diagnosis and also appears to be significantly symptomatic in that she has considerable fatigue related to her hepatitis C. The claimant's diabetes appears to be under good control and is not giving her any significant symptoms.   The claimant suffers from severe degenerative joint disease involving the back, which is giving her limitations in her ability to carry out any strenuous physical activities, although the claimant is able to carry out her activities of day-to-day living without any difficulty.   The claimant's physical symptoms are compounded by the presence of significant obesity.

(Tr. at 419.)   The court notes that other medical evidence in the record indicates that Claimant probably does have hepatitis C, although she does not know how she could have contracted it.

Claimant underwent another consultative examination by Dr. Sushil M. Sethi on September 30, 2008.   (Tr. at 431-441.)   Claimant's height and weight were not reported.   Dr. Sethi's impressions were:

1.  Osteoarthritis of the left knee.   She also complains of pain in the right knee.
2.  Diabetes mellitus.
3.  Possible history of hepatitis C.
4.  History of arteriosclerosis.   No evidence of ischemic changes on the EKG.   No congestive heart failure.
5.  Chronic back pain.   Normal x-ray of the lumbosacral spine.   (Tr. at 434.)

Dr. Sethi opined that Claimant's "ability to work at physical activities may be slightly limited.   Hearing, speaking and traveling are normal."   (Tr. at 435.)

On October 27, 2008, Dr. Porfirio Pascasio reviewed Claimant's consultative examination reports and concluded that she could perform work at the medium exertional level (occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk 6 hours in an 8 hour day, sit 6 hours in an 8 hour day, unlimited pushing and/or pulling).

6

(Tr. at 445.)   He did not indicate any postural, manipulative, visual, communicative, or environmental limitations.   (Tr. at 446-47.)   He commented on the evidence as follows:

> 49 year old claimant with allegations of hepatitis, diabetes, back condition, arthritis, and arteriosclerosis.   She was diagnosed with hep C in June 2005.   She has not had significant health problems from hepatitis. Doctor noted her diabetes was under fairly good control.   She complains of back pain and arthritis, but she has normal exams: normal gait, normal strength, normal grip strength, fine manipulation intact, normal ROM [range of motion] with exception of very mild decrease in ROM of the knees and flexion-extension of the lumbar spine.   The MER [medical evidence of record] does not support any severe limitations.   She is partially credible.

(Tr. at 449.)   On April 10, 2009, another physician, Dr. Fulvio Franyutti, reviewed the medical evidence and Dr. Pascasio's assessment and affirmed it in all respects.   (Tr. at 453.)

On April 13, 2009, Joseph A. Shaver, Ph.D., completed a review of the record and concluded that there was no indication of a medically determinable mental impairment. (Tr. at 455-68.)

On September 8, 2011, Claimant submitted additional medical information, stating, "Dr. White and CCMH [Camden Clark Memorial Hospital] would not do surgery as scheduled because they found my white blood count half of what it [is] supposed to be. In May, I had upper and lower colonoscopy with Dr. Kaplan at CCMH and lab work." (Tr. at 491.)   According to a lab report dated July 21, 2011, Claimant's white blood count was 4.4 (low), compared to a reference range of 4.8 to 10.8.   (Tr. at 493.)   Another lab report dated August 4, 2011, showed her white blood count to be 4.5 (low).   (Tr. at 498.) A CCMH document reflects that Claimant had been complaining of recurrent left lower quadrant pain.   (Tr. at 503.)   An ultrasound was normal.   (*Id.*)   The plan was to

perform laparoscopic examination.   (*Id.*)

The ALJ's decision, a thorough and comprehensive review of Claimant's complaints and medical evidence, comports with the applicable Social Security regulations.   He generously granted her the benefit of the doubt in reducing her physical exertional capacity to light work.   His decision that Claimant has only "fair" credibility is supported by substantial evidence.   Throughout her testimony, Claimant's description of her impairments was exaggerated when compared with the objective medical evidence.   There is, however, one significant ambiguity in the ALJ's decision.

As noted above, the ALJ made a formal finding that Claimant has the residual functional capacity to perform <u>light</u> work, with numerous exertional limitations.   (Tr. at 13.)   He recited Dr. Wahi's and Dr. Sethi's opinions and found both of them "significant."   (Tr. at 16.)   But the ALJ then wrote that he considered both opinions "in coming to my conclusion that the combination of the claimant's severe physical impairments limits her to the <u>sedentary</u> exertional level."   (*Id.*)   [Emphasis supplied.] On the next page, the ALJ wrote that "[i]f the claimant had the residual functional capacity to perform the full range of <u>light</u> work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.20 (for a younger individual) and Rule 202.13 (for an individual closely approaching advanced age)."   (Tr. at 17.)   [Emphasis added.] The ALJ then recited the applicable regulations and Social Security Rulings concerning Appendix 2, noting that when "the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking . . .."   (Tr. at 17.)   The ALJ then wrote the following:

8

[T]he claimant's ability to perform all or substantially all of the requirements of <u>this</u> level of work has been impeded by additional limitations.   To determine the extent to which these limitations erode the unskilled <u>light</u> occupational base, I asked the vocational expert whether jobs exist in the national economy . . ..

\* \* \*

Based on the testimony of the vocational expert, in response to my <u>first hypothetical</u>, I conclude that, considering the claimant's age, education, work experience and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.   A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

(*Id.*)   [Emphasis added.]

The first hypothetical posed by the ALJ at the administrative hearing was:

Hypothetically if we were to consider a person who is now age 51 or approaching advanced age as defined in the regulations who has a high school education and no relevant work experience who would be limited to performing light work as defined in the regulations but who can never perform climbing of ladders, ropes or scaffolds, who can occasionally perform balancing, kneeling, stooping, crouching and crawling and climbing of ramps and stairs, who must avoid concentrated exposure to extreme heat, extreme cold, vibration and hazards such as heights and machinery.   Based on just those limitations would there be any occupations that such an individual could perform?

(Tr. at 46.)   In response, the vocational expert testified that such a person could be a fast food worker, cleaner, housekeeper or cashier.   (*Id.*)   The vocational expert further stated that there would be jobs at the sedentary level for such a person under age 50. (Tr. at 48.)   The ALJ correctly stated, during the administrative hearing, that if he were to find Claimant, at age 51, to have the capacity to perform work only at the sedentary exertional level, the Medical-Vocational Guidelines found at Appendix 2, would indicate that she is "disabled."   (Tr. at 49; Pt. 404, Subpt. P, App. 2, Rule 201.12.)

Based upon careful review of the administrative hearing transcript and the ALJ's decision, the undersigned proposes that the presiding District Judge **FIND** that the

ALJ's isolated statement (at tr. 16) that "the combination of the claimant's severe physical impairments limits her to the <u>sedentary</u> exertional level" was a mistake and in fact he found that she could perform work at the <u>light</u> exertional level, with additional exertional limitations.   All of the ALJ's other findings are consistent with a finding of "light," not "sedentary," particularly when viewed along with the objective medical evidence.   The decision that Claimant can perform work at the light exertional level is supported by substantial evidence.

Claimant contends that the Commissioner did not consider the medical information which she "forwarded to the office."   (ECF No. 2, at 2.)   The undersigned assumes that she is referring to the evidence found at Exhibit 18F, dated from July to September 7, 2011.   (Tr. at 491-504.)   These records from Camden Clark Memorial Hospital were not considered by the ALJ, as he had already issued his decision on October 5, 2010.   The Appeals Council specifically referred to the records in its decision:

> We also looked at Medical records in Exhibit 18F from Camden-Clark Memorial Hospital Pathology Department dated July 26, 2011 to September 7, 2011.  The Administrative Law Judge decided your case through October 5, 2010.  This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 5, 2010.

(Tr. at 1.)   The undersigned proposes that the presiding District Judge **FIND** that the Commissioner's decision not to consider the post-ALJ hearing decision evidence is supported by substantial evidence as the evidence is irrelevant.

Finally, Claimant argues that the Commissioner did not consider that the State of West Virginia issued her a medical card "that qualified me as disabled."   (ECF No. 2, at 2.)   The Social Security regulations provide that "evidence" includes "[d]ecisions by any

governmental or nongovernmental agency about whether you are disabled or blind." 20 C.F.R. § 404.1512(b)(5) (2011). The decision of another agency is not binding on the Social Security Administration, 20 C.F.R. § 416.904, but Social Security is required to evaluate all the evidence, including decisions by other agencies. The undersigned proposes that the presiding District Judge **FIND** that the Commissioner considered all the evidence presented and his decision denying benefits is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States</u>

v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).   Copies of such objections shall be served on opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to the plaintiff, and to transmit the same to counsel of record.

January 29, 2013
        Date

Mary E. Stanley
United States Magistrate Judge

12